Case number 163817, Bruce Corey v. Sedgwick Claims Mgmt Services. Argument not to exceed 15 minutes per side. Mr. Margolis, you may proceed for the appellant. Morning. Give me a minute. I have to put on my glasses or I won't be able to sit. I understand. May it please the Court, my name is Andrew Margolis. I represent Mr. Corey in this action, the appellant. I've reserved four minutes for rebuttal. I'd like to start off with the pertinent facts, including the procedural facts. This is an ERISA case governed by the Arbitrary and Capricious Standard. The facts here start, and it's a unique type of issue here, with an objective requirement of evidence for a disability. This is a long-term disability and short-term disability case, but there's a unique definition in terms of what constitutes objective evidence. Yes, it includes the standardized, typical type of evidence that you might expect, X-rays, MRIs, but it also includes other aspects in terms of ways to prove objective evidence of this disability. And that includes a treatment plan, and it also includes physical examination findings and observations of anatomical, physiological, or psychological abnormalities. And we operate within those definitional parameters, Your Honors. Mr. Corey was a machine operator. He had worked for Eaton for 28 years until 2014. He was a machine operator. In 2014, he developed severe cluster headaches. Those headaches caused him to be in severe pain to the point where he would at times pass out. He attempted to work during this period, took time off, came back to work, but found that he couldn't work any longer. He applied for short-term disability. It was initially approved, then denied, and denied once again, and he was denied a long-term disability application. What's his status since the denial here? Does he still work at Eaton? No, I don't believe so, Your Honor, and he's actually on permanent social security disability. What was the last time that he worked for Eaton? Because I thought after the denial, he did still work off and on for some period. Well, he was initially... He was approved up until May 7th, I think, and then he was denied after May 7th, and I thought he worked for some period after that. I don't believe he worked after that. One of his doctors said at one point, and he was confused, that he could work. You know, they put in that return to work type of slip, that he's expected to be able to return to work and he should work. One of the issues here in this type of case, as you might guess, when the migraine headaches aren't actually occurring, he's able to work. But when he has to return to work, those migraine headaches will reoccur, presumably because he was told to avoid them. He was told to avoid working in a noisy industrial environment. He was told this was his treatment plan, to avoid machinery, operating machinery, including driving a car. He was put on medication, he was given oxygen treatment, and he was told not to return to this heavy industrial job that he was working at. He was a machine operator. Is a cluster headache and a migraine headache, is that the same thing? That's a good question, Your Honor. I've heard it both ways. I think they have a different genesis, but it's still somewhat vague, Your Honor. I think they are two different things. Probably in the grand scheme of things, they're pretty similar, though. But they're always referred to as cluster headaches in the record, is that right? Cluster headaches in that they seem to come in sequence. Not much use of migraine in the record? No, Your Honor. All the doctors, all the neurologists seem to reference them as cluster headaches. It's a distinct headache disorder. Yes, Your Honor. I kind of looked through it. It's distinct from migraines, but who knows why. They come in waves, hence the word cluster. That's right. They come in bouts. One experiences bouts of this disorder. And that's right. And they're exacerbated, of course, by noise and an industrial environment where he was expected to return. One of the issues in this case, Your Honor, is that they're episodic in nature. So that during the periods when they're not occurring, he's relatively fine and able to work. But if he returns to a noisy industrial environment, exerts himself like he had to in his heavy industrial job where he was supposed to be, he's not going to be able to work. But if he was supposed to be able to work for 28 years, all of a sudden the cluster headaches will return. The focus sometimes in this case are the doctors saying that, well, he's perfectly fine and capable of working when his headaches are not occurring. Go ahead, please. If you were to, if this Court were to accept your arguments, what exactly is the relief that you seek? I mean, as I understand it, you'd like a remand for a new look at, but what could the remedy be? Or what relief, the best relief you could expect for your client who can't continue to work? Well, ultimately it would be to review this matter consistent with this unique definition of disability, put him back in the administrative framework, and then apply that unique definition to the evidence, give him short-term disability benefits, if so approved, and then give him the opportunity to actually apply for long-term disability benefits. Is that the point? Is that the real goal? Would these benefits be different? You know, now you, that's why I asked you, where he stands with his, in his life now. And he's on long-term disability with, did you say Social Security? Yes, Your Honor. That's actually not a fact in the record. It's a reality here. I'm still looking for what the reviewer, if this were to go back for a further review, what relief could the reviewer, what term of disability? You say, what term would be available to your client? Well, he would get short-term disability benefits. What would the dates of that be? I mean, realistically, I'm looking for the dates. Where would the person start? That would go back to his application date. I mean, the insurance company, Ann Eaton, would have an opportunity to review. That's May 7th. May 7th of 2014. And he would get those benefits, but of course with long-term disability benefits. End date, May 7th. What's the end date? Well, he would get six months of benefits total in short-term, and then get an application or an opportunity to apply for long-term. Six months would be what you're looking for, and then the ability to extend it by applying for long-term. Yes, and of course any Social Security benefits would be offset or subtracted from that total. Thank you. Certainly a colorable argument, but here's the main concern I have, and you can address it. Some of these programs have an objective manifestation requirement or an objective evidence requirement or something in order to provide for long-term disability. And that applies even though everybody agrees in some of these programs. That applies even though everybody agrees that he may actually be suffering. It's just not covered because there's no objective manifestation. I guess the reason for an insurance company putting that in there is that if there's no objective manifestation, it's too often a problem that somebody could just say, I'm hurting and I quit. Of course. That's the reason, but the language of those kinds of requirements applies whether in fact anyone believes that they're real or not. It's just if there's not an objective manifestation, you're just not covered by the insurance. Now here you say this, although we have such a provision, it's sort of defined away by saying, well, if you've been treated for it, you don't have this objective manifestation requirement. It isn't worded that way, but why doesn't your interpretation lead to that conclusion? That's my question. Does it make sense? Well, yes, obviously you start off with the generalized notion that an insurance company should be allowed to have an objective standard within its policy. But they chose to amplify this particular standard here and allow for proof via treatment plans and observations of abnormalities. I'm just asking about the interpretation of that limitation because it seems to me like you may be, it could be argued that you're interpreting it in a way that just sort of means there is no objective manifestation requirement. Well, I'm not interpreting it in a way that would nullify the original intent of the objective evidence standard. I know that, yes, that's my question. But I would say that it's to be used with the supplemental type of forms which says that you can prove it through these four or five extra categories. And it's intended to be used broadly here to perhaps allow for certain type of diseases like fibromyalgia, for example, a very difficult disease. You can go to a doctor and get medicine for fibromyalgia and then they fit within the exception? Well, the medication still has to, and I agree with the district court in some sense, either show that you can't perform the essential functions of the job or as to one of the other factors to show objective. The medication itself has to show that? The medication really has to lead towards you not being able to perform the essential functions of the job. That is essential, I think. Couldn't it be medication that simply relieves you of your symptoms? That's not enough to be objective? Well, if it relieves you of your symptoms, then presumably you're still going to be able to perform the essential functions of the job. I think the medication, which isn't at issue here, but was in other cases, including the Fourth Circuit case that the defendant cites. Medications have to interfere with the ability to perform your job. So if the medication is working and you can still perform your job, then that medication wouldn't constitute objective. It can be under treatment, and now I'm a little confused. Oh, the medication can be objective but not disabling? Yes. You could have medication or treatment which palliates or reduces your inability, but the very fact that you're receiving it shows that you can't perform your job. It shows that some doctor has considered that you actually have these headaches. But that's not enough? That's not enough itself. Of course you have to look at the bigger picture, but the treatment plan issue here goes towards objective evidence, because if you look to the treatment plan, which tells him, well, you can't return to work in this noisy, heavy industrial environment and work as a machine operator. You can't even drive your car, they said. That's the treatment plan. When you're in a flare? Or for that matter, when you're not in a flare, Your Honor, because it will cause you to become disabled when it flares up, when you're reintroduced to those type of conditions. So that prevents you from performing the essential functions of the job. If you've got to go back to this job, your headaches occur. Your argument, before you sit down, confirming that your argument is that the objective evidence exists here and it is in the form of this extensive treatment plan. And, Your Honor, that's partially correct, and, Your Honor, it's the trigeminal nerve irregularity that was observed by this particular... I don't know why... To win your appeal, does the court need to accept the combination thereof?  Thank you. I see my time is up. Thank you. Good morning. May it please the Court. Maynard Buck, Bennis Friedlander, Copeland and Arnoff for the Defendant Appellate. I think it's important to briefly start with what's not in dispute here, and that's the arbitrary and capricious standard of review. And also, as this Court has said many, many times, it is certainly appropriate for a plan to require objective findings of a disability. And I think, Judge Rogers, your questions went right to that and recognized that is the law within the Sixth Circuit, and really all circuits. The question is whether they've really done that here, when they say one objective way may be a treatment plan. True. And certainly the plan does recite treatment plans and medications as a possible objective finding. But certainly, as the District Court found, and I think as the plan language fully supports, a medication or a treatment plan, in and of itself, the mere fact of its existence is an objective evidence of any particular condition. It is? It is not. Why not? Because... You have the numbered list. The fourth one says treatment. It says treatment plans. But the overall intent of the plan, in terms of compensating for disability, assumes that the cause of the disability prevents work. And if the only objective finding were the fact that someone was on pain medication, does not turn the subjective complaint of pain into some objective finding. Neither would an x-ray. Well, I would disagree, Your Honor, because... You don't know whether that prevents work, it just shows the broken bone. I don't understand the work connection to whether an x-ray is objective or not. An x-ray is much more objective than a complaint and a moan, right? A person comes in and is moaning because it hurts, but there's nothing objective. But an x-ray is objective, but neither one tells you whether you can work or not. But the x-ray verifies objectively the condition. The condition, right? Not whether the condition keeps you from working. It verifies the condition. Well, there has to be a connection. I mean, certainly... No, but the x-ray doesn't have to demonstrate the connection. The x-ray demonstrates the condition. Isn't that right? But the physician or the health care provider would have to continue from the point of view of a broken arm does limit the ability to work. But the broken arm is the condition. Okay, but here, and correct me if I'm wrong, the complaint in essence is that the plan didn't look at can he do his work. It stopped at the point of saying you have no objective evidence. Obviously, once you have the objective evidence, you still have to say, as Judge Rogers was saying, is this so bad that you can't work, okay? I mean, if I'm a lawyer, a broken arm may not stop me from working. But I thought the fault that the other side is pushing is that you said there's no objective evidence, and they said, yes, we have this objective evidence under your standard. And let me add, I would note that one of the objective evidence that the plan would accept is diagnoses, which is in a certain sense non-objective, that is the doctor has made a diagnosis. All they want is for you to say, we've got the evidence, now you evaluate whether our evidence is good enough. What's wrong with that? Well, here, I think the plan did find that there was no objective evidence. In fact, a number of the reviewing physicians said the same thing, that there is no objective evidence. But there is also plenty of record, plenty of evidence in the record, which substantiates the finding that the plaintiff was in fact able to work. If you look at Dr. Barron's report, a treating physician, a treating physician. I don't want to talk about objective evidence. If you want to talk about whether people said they could work or not, it's just not responsive to whether there's objective evidence. It seems to me if you concede that there's objective evidence, a remand is necessary. We don't concede that there's objective evidence of a condition. We don't concede that there's objective evidence. We would certainly not concede and disagree with the fact that there is objective evidence. How do you get that, though? You say we get there by saying they can't work. Sounds like a non sequitur. But I think the plaintiff's position has been that the fact of medication and the fact that there was some treatment prescribed. Well documented history of treatment and medication. Including the fellow was willing to get an implant in his brain. He was certainly evaluated for that process. We don't know that it happened. The plan doesn't say four of these. Each of the requirements, the potential objective, whatever is determined to satisfy the plan, the four items, number four is a treatment plan or evidence of treatment. And it can stand alone as I read your plan. I guess the point in the end is that there was no reasoned explanation by the decision maker here, by Sedgwick, in its final denial, no reasoned explanation that accounted for the objective evidence that exists with respect to its well documented long standing treatment for this condition. The final determination. And that could be determined to be, and has been in other cases, arbitrary and capricious. The failure to offer reasoned explanation. It didn't even acknowledge that that was, as I see it counsel, so I'm saying a lot, and then the floor is yours. But it didn't seem to acknowledge that his well documented treatment could stand for an objective, as objective evidence. The final determination did indicate that the medical opinions of all of us, all the physicians submitted had been reviewed, and that there was, the objective evidence was lacking. I think if you look at the decisions of this court. There's a letter of September 26th, page ID 912, where it says reasons for denial. Is that the document we're talking about? The final determination letter from the administrative committee. And if you look at the reasons for denial, that's the bottom of the second page. As I read it, it just says, besides some boilerplate, the substantial weight of the documentation provided by you supports the conclusion that your disability is not covered. It doesn't say, to me, your disability is not covered because you can work, or your disability is not covered because of objective, lack of objective. It just says your disability is not covered. Should I look at a different page or somewhere? I apologize, I don't have it in front of me, but the determination letter did go through the requirement of objective factor. It lists that above it, and normally, again, if I were a lawyer writing this letter, I think I would say, your disability is not covered because you don't have objective evidence, or because of something. Now, you might make the connection, but even if it said because you don't have objective evidence of anything, then the counter is, yes, I do, I have a treatment plan, I have a diagnosis, too, I think. I mean, there's a diagnosis of cluster headaches. And then you would think it would then say, and we have determined, because of Dr. Rourke and all these folks, that you can still work. Now, that would make some sense. That's what I'm looking for. I think your point is well taken, Your Honor, that if it were you as counsel writing a letter, it may be a little different. But I think, as this Court has recognized many times, including, I would say, to the Daniel v. Eaton plan case, the kind of recitation in a determination letter that indicates that the plan has reviewed all of the medical evidence and other pertinent evidence submitted, and in light of that review, concludes that there is no disability here, is a sufficient description in a determination letter. And I think going back... I thought the reason that the district court gave, which you endorsed, was that in order to be objective, the medication or treatment plan had to, the treatment itself had to keep him from working. Okay. The district court, under the arbitrary and capricious standard, deferred to the plan's analysis to that effect. That analysis would explain, arguably, the rather counterintuitive, frankly, reading of the plan to say that. It doesn't make sense to me that the treatment plan itself has... There might be some, like, in order to treat this leg injury, you have to be in a wheelchair, and the wheelchair keeps you from working, I guess would be the idea, all right? You could have a limitation like that, but it certainly doesn't say that in so many words. And by comparison to some of the others, it suggests instead that we're going to say, if you've been given medications or a treatment plan, that would be enough. So we would have to interpret it in kind of a counterintuitive way, but to do that, we'd have to ascertain that that's the way that the plan interpreted it. And I don't see anything in the record for the district court to come to the conclusion that that's the plan's interpretation, other than the mere fact that you won. I think, Your Honor, if you look at the... I want to see where that analysis is, because it's a little bit... If that was the obvious analysis, I could assume that that's what they made. But since it's the counterintuitive analysis, it needs a little bit of this is what we think. And it's not there that I can find. You say several times in your brief that they reasoned that way, but I don't see the reasoning. Is it in the record anywhere? What they did, they focused on the need for objective findings in the determination letter. Right, but if you look at the doctor reports where they say there is no objective finding, they're not talking about this provision which is within the definition of objective findings. I'm referring to the determination letter. The determination letter specifically focused... But it doesn't say medication or treatment plan if the medication or treatment plan is the, if implementation of the medication or treatment plan keeps him from working. I would agree. It does not say that. And I don't know of any decision of this Court or any other that says that kind of specificity is necessary. It isn't required. But without it, you would assume that it means what it generally means, rather than a very kind of tortured and limited meaning of those words. But if I may, Your Honor, I think when the plan looks in the determination letter and focuses first specifically on the need for objective evidence, and then determines... That's an x-ray kind of thing. That's what typically a plan loves to have that, because there's no doubt. A person has a broken shoulder, right, or a misplaced tibia, something. But in a situation like this, we have cases that have a very difficult... You know, there's got to be... But happily, your plan in its six, and I said four, but in its six criteria to establish disability, the last one takes into account a fellow like this, who only manifests in his head, literally. So it allows for compensating a fellow like this, who can't show an x-ray. Well, that interpretation is left to the plan. And the district court, I think, correctly said, when you're talking about an arbitrary and capricious standard, if it's a rational, reasonable interpretation of the plan, it has to be upheld. Where is that interpretation? The interpretation, I would submit, Your Honor, is there because the determination letter first says, you need objective evidence, and then finds there is no disability. Now, is there a logical connection to that? Absolutely. No, I'm requiring you to present objective evidence, and I'm finding no disability. It doesn't seem to acknowledge the sixth factor, which is the medication and treatment plan. In its decision, which it needs to do, it has to give a reasoned explanation. And if it doesn't, that itself would call it arbitrary and capricious, or would warrant the label. Again, I think the determination letter, when it sets forth the requirement of objective factors, then determines there's no evidence supporting a disability, which is what it does. And I acknowledge that's really all it does. But that is, I think, very clearly an indication and a statement that the plan administrator found no objective evidence to support the disability. It doesn't really say, counsel, does it? You know, you said you don't have it in front of you, that there's no evidence supporting the disability. It says the substantial weight of all of it supports the conclusion that your disability is not covered. And we're sort of getting over into what the district court said, but I read this to say your disability is not covered. It might be not covered because you can still work. It might be not covered because you have no objective evidence. You're right, it's on the same page, but the objective evidence is like boilerplate, right? They're submitting, they're telling you what the plan says, and then they give you this one-line conclusion. Right. And I think, Your Honor, and I see my time has expired, that probably gives me a good point to sum, if I may. Time is up, unless you want to respond directly. I'd like an answer to that. That is what the determination says, and I think it indicates by what's before it that there's no objective finding. I think it also ties in to the point that there is, apart from this issue, evidence in the record from his treating physicians, that he was able to perform the essential functions and work, even notwithstanding the occurrence of the headaches. And I would refer the Court to Dr. Behrens. Thank you very much. Counsel. Your Honors, the final denial, Judge Boggs, as you mentioned, is in fact boilerplate, and it cuts against, even though this is a very difficult standard, the arbitrary and capricious standard, there's still a requirement that the evidence be looked at, in a full and fair manner, and that it be reasoned. And there's no reasoning contained in that final portion. So if we gave you a remand, you might win, or they might say there are no objective findings, and we could review that, or they could say there are objective findings, but you can still work despite those findings, right? I mean, any of those are possible on remand. I suppose, but I don't think you can reconcile his treatment plan and show that he can return to work without the reestablishment of these conditions, which would be utterly debilitating. Well, you might be right, but we're not the ones in the position to agree with you at this point. I'm just saying that on remand, then you have to convince them and see what the result is. Yes, I am concerned that if on remand it goes back and they all of a sudden come up with this new type of radical rationale that didn't exist beforehand, that it will sort of be a post hoc type of rationalization that will allow them to get away with this. You can attack it for that reason. I mean, we have law that says you don't get post hoc rationalizations. Right, but all of a sudden they'll say, well, this was our intent. But I think we have to go back to this very unique definition that allows for medications and treatment plans and observations. And you'll notice that when they asked these doctors who were just simply reviewing a paper type of review, not an actual examination, they asked him, are there any medications which prevent him from returning to his job? They didn't ask whether there were treatment plans that would prevent him from returning to his job. So, Your Honors, under those circumstances, we look to the issue. It's not enough really here for an insurance company or an employer or a plan to exhibit certain aspects of rationality or to make logical sense in its denial. They have to track the specific definition and apply those four or five factors and say, do these factors apply here to the medical evidence? And would that prevent him from performing the essential functions of his job? And we feel that it did prevent him from performing the essential functions of his job. So we ask for remand, Your Honor, and we ask for specific instructions so as not to allow this insurance company and this particular plan to evade their responsibility to actually apply the specific definitions within this plan. Meaning the last one. What do you ask from that specific? You said order them to do something specific, to apply the specific definition. Yes, the four or five categories and analyze those four or five categories. Do you hope to get anything out of the others? Well, I think, you know, one of the judges, I think it was Judge Rogers, and forgive me if it was you, Judge Boggs, mentioned diagnosis. I thought you would argue that, but you pretty clearly didn't. Well, there seemed to be more, we had a lot to argue, Your Honor. But you have to argue it. Right, but remember, and this is interesting, Mr. Corey was unrepresented in the administrative process. And so when he got to this level. Right, Your Honor, we felt that the treatment plan and the trigeminal finding observation, the regularity, was the strongest. I'm not criticizing you for making your judgments, but it's a little late to add arguments. No, I was just simply amplifying your suggestion. Well, it was Judge Boggs, actually. Oh, Judge Boggs, well, forgive me. All right, that's all I have. Thank you, Your Honor, we appreciate your time and appreciate the opportunity to orally argue this.